**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**at COVINGTON**

**CRIMINAL ACTION NO. 13-1-DLB**

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                          **REPORT AND RECOMMENDATION**

KEVIN DAVIS                                                                    DEFENDANT

**IN RE: THIRD-PARTY CLAIM OF**
**CLAIMANT PRINCESS GILL**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the Court on Claimant Princess Gill's third-party claim to a 2008 Infiniti G35 ("the Infiniti"), brought pursuant to Federal Rule of Criminal Procedure 32.2(c) and 21 U.S.C. § 853(n). (R. 30-1, 33). The presiding District Judge referred the matter to the undersigned to hold an ancillary hearing to adjudicate Ms. Gill's alleged interest in the Infiniti. (R. 59). On September 11, 2014, the Court held the ancillary hearing to gather evidence as to Ms. Gill's claim. (R. 70). Having completed the hearing, the matter is now ripe for consideration and preparation of a Report and Recommendation. 28 U.S.C. § 636(b). For the reasons stated below, it will be herein **recommended** that Ms. Gill's third-party claim to the Infiniti be **denied.**

**I.      Facts and Procedural History**

On January 17, 2013, a federal grand jury returned an Indictment against Defendant Kevin Davis that charged him with three counts of conspiracy to distribute and possess with intent to distribute controlled substances. (R. 3). On April 11, 2013, a federal grand jury returned a Superseding Indictment, which added a forfeiture count seeking the forfeiture of the Infiniti and a

2012 Nissan Maxima. (R. 21). On April 12, 2013, Kevin Davis pled guilty, pursuant to a Plea

Agreement, to Count 2 of the Superseding Indictment, charging him with conspiring to distribute

and possess with intent to distribute five kilograms or more of cocaine. (R. 24).

After Davis pled guilty, and pursuant to his Plea Agreement (R. 39, at ¶ 9), presiding District

Judge Bunning entered a Preliminary Judgment of Forfeiture that forfeited any interest Davis had

in the Infiniti, along with other property that was seized by the Government in connection with

Davis's criminal matter. (R. 29). The presiding District Judge also directed the United States to

notify persons who may have an interest in the property of their rights pursuant to 21 U.S.C.

§ 853(n). (*Id.*). Thereafter, Claimant Gill, Davis's girlfriend and mother of his three children (*see*

Audio Transcript of September 11, 2014, Ancillary Hearing ("Audio Tr"), at 2:04:16), filed a third-

party claim to the Infiniti.[1]  (R. 30-1; *see also* R. 31 & 33 (wherein the District Judge construed

Gill's filing as a third-party claim under Federal Rule of Criminal Procedure 32.2(c) and 21 U.S.C.

§ 853(n)).

Ms. Gill participated *pro se* at the ancillary hearing. She testified that in September 2012,[2]

she went to Northern Kentucky Auto Sales to trade in a 2006 Nissan Maxima that Davis had given

her.[3]  (Audio Tr. 1:45:23). Ms. Gill stated that she was unable to purchase the car she intended to

---

[1]While Ms. Gill originally filed a claim as to two vehicles, she clarified during her deposition that she is only claiming an interest in the Infiniti and not the 2012 Nissan Maxima that was also seized in this matter. (R. 41-5, at 6). Accordingly, the presiding District Judge entered a Partial Final Decree and Order of Forfeiture as to the 2012 Nissan Maxima (R. 60), and that vehicle is not the subject of this Report and Recommendation.

[2]While Ms. Gill testified that the events surrounding the purchase of the Infiniti occurred in 2013, the exhibits she produced indicate that the events took place in 2012. The Court finds Ms. Gill's testimony regarding the date was simply a misstatement. (Audio Tr. 1:45:23).

[3]Ms. Gill explained that the 2006 Maxima traded in for the Infiniti was originally purchased by Davis. (Audio Tr. 2:05:30). After Davis gave Ms. Gill the 2006 Maxima, she titled it in Yolanda Satcher's

buy due to mechanical problems with that vehicle, but ultimately took possession of the Infiniti in

October 2012. (*Id.*). Ms. Gill testified that she purchased the Infiniti at Northern Kentucky Auto

Sales for $7,500; specifically, she paid $3,500 in cash, putting $500 down and making approximately

four cash installments, and she received credit for the remainder of the amount due in trade for the

2006 Maxima. (*Id.* at 1:45:23 - 1:46:57; 2:03;34 - 2:04:00). She also testified that Matt Ryan, the

manager of Northern Kentucky Auto Sales, did not give her receipts for her cash payments, but

instead tracked the cash payments on a piece of paper he kept at the dealership. (*Id.* at 2:05:48).

At the hearing, Ms. Gill introduced into the record a Retail Purchase Agreement that reflects

the purchase of the Infiniti for $7,500 cash on November 15, 2012, and identifies the purchaser as

Yolanda Satcher, whom Gill testified is her step-sister. (Claimant's Exh. 1). Ms. Gill testified that

she had the Infiniti put in Yolanda Satcher's name because Gill did not have a valid driver's license

at the time of the purchase. (Audio Tr. 1:47:24 - 1:47:43). Gill also presented a receipt from the

Hamilton County Clerk of Courts that she testified evidences that on January 15, 2013, the vehicle

was registered in Ohio to Yolanda Satcher and that $511 was paid in cash for taxes to register the

vehicle.[4] (Claimant's Exh. 2). Gill also introduced a receipt from the Ohio Bureau of Motor

Vehicles that evidences payment for obtaining the license plate for the vehicle, which also references

Yolanda Satcher. (Claimant's Exh. 4). Ms. Gill testified that despite these records referencing Ms.

Satcher, Ms. Gill made all the payments to register and title the vehicle. (Audio Tr. 1:55:05). Ms.

---

name. (*Id.* at 2:02:43-2:03:10). Thus, at the time of the trade in, the 2006 Maxima was titled to Ms. Satcher. (*Id.*).

[4]While Gill referred to Exhibit 2 as being the State of Ohio Registration for the Infiniti, Exhibit 2 is a receipt for payments made to the Hamilton County Clerk of Court on January 15, 2013. Nevertheless, the Certificate of Registration is contained in the record as an exhibit to Gill's deposition, and has been considered in the Court's ruling herein. (R. 41-5).

Gill also sought to introduce an unsworn statement of Ms. Satcher that reflects Ms. Satcher is not

the owner of the Infiniti, but the vehicle was put in her name until Ms. Gill got her driver's license.[5]

(Claimant's Exh. 6). Ms. Gill further testified that she earned sufficient income to purchase the

vehicle and introduced a 2012 Form 1099, evidencing that her income for 2012 was $46,707.92.

(Claimant's Exh. 5).

At the ancillary hearing, Ms. Gill also presented the testimony of Mr. William Rankin, her

father-in-law. (Audio Tr. 1:42:33). Mr. Rankin testified that he believed Ms. Gill to be the owner

of the Infiniti, and he saw Davis driving the Infiniti only periodically. On cross-examination, Mr.

Rankin testified that he was not present when the Infiniti was purchased.

Upon conclusion of Ms. Gill's presentation of evidence, the Government presented the

testimony of Agent Ken Baker, a member of the Drug Enforcement Agency Task Force. (Audio Tr.

2:18:23). Agent Baker testified that during his investigation of Davis, he saw Davis driving the

Infiniti on two occasions the week prior to his arrest. *(Id*. at 2:19:50 - 2:23:15). Agent Baker did

not see Ms. Gill drive the vehicle. *(Id*.). Agent Baker further testified that during his investigation

of Davis, he learned that the two vehicles seized in this action were purchased from Northern

Kentucky Auto Sales. *(Id*. at 2:21:55). Agent Baker testified that his investigation revealed that

---

[5]The Court noted at the hearing that Ms. Gill referenced Ms. Satcher's written statement in a prior
filing, but that the record in this matter did not contain a copy of the statement. The Assistant United States
Attorney informed the Court that he had a copy of Ms. Satcher's statement, as Ms. Gill sent it to him in this
matter and had also presented it in the administrative action. Ms. Satcher's written statement has not been
previously presented to this Court. Ms. Gill moved to have the statement admitted as part of the record in
her case as Claimant's Exhibit 6. (Audio Tr. 2:55:02). The Government objected to the admission of Ms.
Satcher's statement because it had not had the opportunity to cross-examine Ms. Satcher. Over the
Government's objection, the Court accepted the filing to complete the record, but informed Ms. Gill that
given the Government did not have an opportunity to cross-examine Ms. Satcher and that the statement was
not sworn, the Court would need to determine what weight to give this statement. (*Id*. at 2:57:00 - 2:59:26).
Upon consideration, the Court has given the statement no weight, as it is inadmissible hearsay. *See* Fed. R.
Evid. 801.

Davis purchased the 2006 Maxima that was traded in for the Infiniti with drug proceeds. (*Id*. at 2:22:20).

The Government also presented the testimony of James Matthew Ryan, general manager of Northern Kentucky Auto Sales. (Audio Tr. at 2:24:45). Mr. Ryan testified that he knows Kevin Davis, and he had sold Davis several vehicles, including the Infiniti. (*Id*. at 2:25:49). Mr. Ryan testified that he sold Davis the Infiniti for $7,500 cash and a 2006 Nissan Maxima, which had a trade-in value of $5,500. (*Id*. at 2:27:06-2:29:20). Mr. Ryan recalled that the Infiniti was titled in the name of Yolanda Satcher because that was the name Davis wanted the car to be titled in. (*Id*. at 2:27:06). Ryan testified that "every time" Davis bought a car from him, he titled it in someone else's name. (*Id*. at 2:31:23).

Mr. Ryan recalled meeting Ms. Gill in the fall of 2012 when she, her son and Kevin Davis came to the dealership to trade in the 2006 Maxima and pick up the Infiniti. (*Id.* at 2:28:13; 2:33:50 - 2:39:30). Mr. Ryan testified that Davis paid for all the cars he purchased, and the Infiniti was no different. (*Id*. at 2:38:12). He specifically testified that Ms. Gill did not make any of the payments for the Infiniti. (*Id*. at 2:27-50; 2:37:52 - 2:38:12).

After the close of the evidence, the Court heard argument. Ms. Gill told the Court that she has never benefitted from Mr. Davis's illegal conduct, and she has worked since she was eighteen years old to care for herself and her children. Ms. Gill seeks the return of the Infiniti.

II.     **Analysis**

Under federal law, defendants convicted of a federal drug crime under Title 21 of the United States Code punishable by imprisonment of more than one year shall forfeit "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result

of such violation," and "any of the person's property used, or intended to be used" in furthering such violation. 21 U.S.C. § 853. Third parties may assert claims to property subject to forfeiture through ancillary proceedings under § 853. *See* 21 U.S.C. § 853(n); *United States v. Fabian*, __ F.3d __, 2014 WL 4357548, at *2 (6th Cir. Sept. 4, 2014). Section 853 allows only two avenues of relief, requiring that the petitioner show by a preponderance of the evidence that either:

> (A)    The petitioner has a legal right, title or interest in the property, and such right, title or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B)    the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6)(A) & (B); *see also Fabian*, 2014 WL 4357548, at *2. If a petitioner meets her burden of proof, the Court will be required to amend the order of forfeiture in accordance with its determination. 21 U.S.C. § 853(n)(6).

To prevail under the first scenario, Gill must establish that she had a vested interest in the property or that her interest was superior to that of Davis **at the time Davis committed his criminal acts.** 21 U.S.C. § 853(n)(6); *see also United States v. Gallion*, No. 2:07-39-DCR, 2010 WL 3620257, at *12 (E.D. Ky. Sept. 10, 2010). This section requires a claimant's superior interest accrue prior to the defendant's criminal act because under the statute, the interest of the United States vests upon the commission of the criminal act giving rise to forfeiture. *See* 21 U.S.C. § 853(c); *See also SKL Inv., Inc. v. United States*, No. 13-mc-38, 2014 WL 4365297, at *4 (W.D. Tenn. Sept. 2, 2014) (*quoting United States v. Huntington Nat'l Bank*, 682 F.3d 429, 433 (6th Cir. 2012)). "Thus,

after the commission of the criminal acts, title to the forfeitable property, by operation of the relation-back clause, actually belongs to the government." *SKL Inv*., 2014 WL 4365297, at \*4; *see also United States v. Allmendinger,* No. 3:10-CR-248-01, 2012 WL 966615, at \*2 (E.D. Va. Mar. 21, 2012)*; Gallion*, 2010 WL 3620257, at \*12 (§ 853(n)(6)(A) not applicable because third party did not have interest in property prior to criminal conduct).

The same rule applies to property purchased with proceeds of criminal conduct that is acquired after the criminal conduct began. *See SKL Investments, Inc*., 2014 WL 4365297, at \*4 ("[w]hen property is purchased with criminally derived proceeds, "title to the property vest[s] in the government when it [is] purchased" because "proceeds of crime do not precede the crime") (*quoting United States v. Warshak*, No. 09–3321, 2011 WL 2450991, at \*2 (6th Cir. Mar. 30, 2011) (per curiam)); *see also United States v. Brinton*, 880 F. Supp. 2d 1158 (D. Utah July 27, 2012) (house was purchased with proceeds of crime and thus § 853(n)(6)(A) does not provide third party a remedy since interest could not have vested prior to criminal acts); *Allmendinger,* 2012 WL 966615, at \*2 (same but with respect to a truck); *United States v. Brewer,* 591 F. Supp. 2d 864, 869 (N.D. Tex. Sept. 29, 2008) (because money used for earnest-money and closing payments came from criminal activity that necessarily preceded the purchase, third party could not have had an interest in property prior to criminal act); *United States v. West*, No. 3:06-CR-92, 2007 WL 701044 (E.D. Tenn. Mar. 2, 2007) ( "The United States' interest in the defendants' drug proceeds thus arose immediately upon receipt of these proceeds by the defendants, and arose as to the subject real properties immediately upon acquisition of the property by defendants with drug proceeds . . . .").

Here, the preponderance of the evidence establishes that the Infiniti was purchased with proceeds of Davis's illegal conduct. Ms. Gill testified that the Infiniti was purchased in 2012 by

trading in a 2006 Maxima and paying the balance in cash payments. While she testified that she made the cash payments for the Infiniti, she was unable to corroborate her testimony with any other evidence: i.e., she did not present receipts for payments, Matt Ryan's ledger/notation of cash payments, or any corroborating testimony.

In contrast, the Government presented witness testimony that Davis's drug proceeds financed the purchase of the Infiniti. During her testimony, Gill admitted that the 2006 Maxima that was traded in for the Infiniti was given to her by Davis. Agent Baker testified that his investigation revealed Davis purchased the 2006 Maxima with drug proceeds, and Ms. Gill did not present any evidence or testimony to the contrary. In addition, Mr. Ryan testified that Davis, not Gill, made the cash payments for the Infiniti.

Gill was unable to present sufficient evidence to tilt the scales in her favor as required to meet her burden under the preponderance of the evidence standard. Since the preponderance of the evidence supports a finding that the Infiniti was purchased with the proceeds of Davis's illegal conduct, the Government's interest in the property related back to the date of the criminal acts, which Davis admitted in the Plea Agreement began in 2009 (R. 39, at ¶ 3). Therefore, Gill cannot prevail under § 853(n)(6)(A). *See Gallion*, 2010 WL 3620257, at *12 (§ 853(n)(6)(A) not applicable because third party did not have interest prior to criminal conduct).

Similarly, Gill has not met her burden of establishing that she is a bona fide purchaser for value of the right, title or interest in the Infiniti as required to prevail under 21 U.S.C. § 853(n)(6)(B). The bona fide purchaser exception in § 853(n)(6)(B) applies "where the petitioner acquired his legal interest after the acts giving rise to the forfeiture but did so in the context of a bona fide purchase for value and had no reason to believe that the property was subject to forfeiture." *United States v.*

*Carter,* 09-cr-4-DLB, 2010 WL 3721046, at *3 (E.D. Ky. Sept. 15, 2011) (*quoting United States v. Harris*, 246 F.3d 566, 574 (6th Cir. 2001)).

In determining whether Gill falls within the scope of § 853(n)(6)(B), "the Sixth Circuit looks to the traditional definition of 'bona fide purchaser.'" *Id.* (*citing United States v. Campos*, 859 F.2d 1233, 1238 (6th Cir. 1988)). A bona fide purchaser is someone who has purchased the property in good faith and for valuable consideration. *Id.* "The 'bona fide purchaser for value' exception under § 853(n)(6)(B) has three elements: (1) the claimant has a legal interest in the forfeited property, (2) the interest was acquired as a bona fide purchaser for value, and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture." *Id.* at *3 (*quoting United States v. Timley*, 507 F.3d 1125 (8th Cir. 2007)). Accordingly, "the only assets that are potentially immunized from forfeiture are those for which value has been given." *Id.* (*quoting United States v. Brown*, 509 F. Supp. 2d 1239, 1245 (M.D. Fla. 2007)).

Here, even if the Court were to find Gill has a legal interest in the Infiniti, she has not established by a preponderance of the evidence that she is a bona fide purchaser for value.[6] As stated above, Gill admitted that part of the payment for the Infiniti came from trading in a 2006 Maxima that Davis had given her. Agent Baker testified that his investigation revealed Davis purchased the

---

[6]In determining a third-party claimant's legal interest in forfeiture matters, federal courts "look to the law of the jurisdiction that created the property right to determine the [claimant's] legal interest." *United States v. Salti*, 579 F.3d 656, 668 (6th Cir. 2009). Here, title to the Infiniti was issued by the State of Ohio; thus, Ohio law is considered. Ohio Revised Code (O.R.C.) § 4505.04(A) requires a certificate of title be issued in the name of the person acquiring an interest in a motor vehicle, which suggests that title is necessary for ownership. It is undisputed that Claimant Gill does not possess a certificate of title to the Infiniti issued in her name. However, the Ohio Supreme Court in *State v. Shimits* held that O.R.C. § 4505.04 was designed to protect title and create a system for demonstrating ownership, but was not intended to deprive equitable owners of their interest in a vehicle when forfeiture of the property is being sought. Thus, Ohio recognizes an equitable interest in vehicles apart from that of the certificate of title. *State v. Shimits,* 461 N.E.2d 1278, 1281 (Ohio 1984); *see also In re $449 U.S. Currency*, No. C-110176, 2012 WL 1366736 (Ohio Ct. App. Apr. 18, 2012).

2006 Maxima with proceeds of his criminal conduct. No evidence was introduced to the contrary. Further, while Ms. Gill testified that she made the cash payments for the Infiniti, Mr. Ryan testified that Davis, not Gill, made the cash payments for the Infiniti. Based upon the evidence submitted at the Ancillary Hearing, Gill simply has not been able to tip the balance of evidence in her favor to establish that she was a bona fide purchaser of the Infiniti for value.

## III.    Conclusion

For the reasons stated herein, the Court finds that Ms. Gill has not established by a preponderance of the evidence that she had an interest in the Infiniti prior to Davis's criminal acts or that she is a bona fide purchaser for value as required to prevail under either 21 U.S.C. § 853(n)(6)(A) or (B). The Court being sufficiently advised,

**IT IS RECOMMENDED** that:

1.    Ms. Gill's third-party claim to the Infiniti (R. 30-1) be **denied;** and,

2.    the presiding District Judge enter a Final Decree and Judgment of Forfeiture as to the 2008 Infiniti G35 consistent with the Preliminary Judgment of Forfeiture entered on April 23, 2013 (R. 29).

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within **fourteen (14) days** or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (*citing Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are

insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another's objections within **fourteen (14) days** of being served with those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 27th day of October, 2014.

Signed By:

*Candace J. Smith*

United States Magistrate Judge

G:\DATA\Orders\criminal cov\2013\13-1-DLB Gill claim to Infiniti.wpd