UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL ACTION NO. 2:13-cr-001-DLB-CJS
CIVIL ACTION NO. 2:14-cv-07348-DLB-CJS

UNITED STATES OF AMERICA                                    PLAINTIFF

                        ORDER AND
v.              REPORT AND RECOMMENDATION


KEVIN DAVIS                                                 DEFENDANT

* * * * * * * * * *

Defendant Kevin Davis has filed a *pro se* Motion To Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.  (R. 50).  The United States has filed its Response (R. 56), to which Defendant has filed a Reply.  (R. 65).  Having all relevant documents before the Court, this matter is now ripe for consideration and preparation of a Report and Recommendation.  28 U.S.C. § 636(b).  For the reasons stated below, it will be **recommended** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence (R. 50) be **denied**.

I.      FACTUAL AND PROCEDURAL HISTORY

On January 17, 2013, a federal grand jury returned a three-count Indictment against Defendant, alleging that he conspired with others[1] to distribute controlled substances in violation of 21 U.S.C. §§ 841(a), 846.  (R. 3).  Count 1 charged Defendant with conspiracy to distribute one kilogram or more of heroin between August 19, 2006, and March 18, 2011; Count 2 charged Defendant with conspiracy to distribute five kilograms or more of cocaine during the same period;

_____

[1] Three co-conspirators, Maury Eakins, Raymond Hill, and Lee Moore, were charged by separate indictment in a related case.  *See United States v. Eakins, et al.*, No. 2:11-cr-35-DLB (E.D. Ky. 2011).

and Count 3 charged Defendant with conspiracy to distribute an unspecified amount of marijuana between August 19, 2006, and October 19, 2011.  (*Id.*).

Defendant was arrested on February 15, 2013.  (R. 13).  Following his arrest, Defendant completed a written waiver of his *Miranda* rights and signed a typewritten confession in which he admitted to the conduct underlying the charged conspiracy to distribute cocaine, heroin, and marijuana.  (R. 56-1).  Specifically, Defendant confessed that:  (1) he was aware some of his childhood friends—Maury Eakins, Raymond Hill, and Kareem Fairbanks—were selling cocaine and heroin; (2) he gave those friends high-grade marijuana from California; (3) he witnessed those friends counting large amounts of money at the "Glenwood address" on several occasions; (4) he once moved cocaine out of a parked car at Hill's request; (5) he once allowed those friends to count approximately $250,000 worth of drug proceeds at his residence; and (6) he and his cousin intended to use the money seized from them at the airport to buy high-grade marijuana.  (*Id.*).

On April 11, 2013, the grand jury returned a Superseding Indictment against Defendant. (R. 21).  The Superseding Indictment retained Counts 1 and 2 from the original Indictment, amended Count 3 to extend the duration of the marijuana conspiracy through February 15, 2013, and added a forfeiture allegation regarding two vehicles that allegedly were proceeds of the charged conspiracy. (*Id.*).  On April 12, 2013, pursuant to a written Plea Agreement, Defendant changed his initial plea and entered a plea of guilty to Count 2 of the Superseding Indictment.  (R. 39).  In exchange, the Government agreed to move for the dismissal of Counts 1 and 3 at sentencing and recommend the statutory minimum sentence of 120 months of imprisonment.  (*Id.*).

At the rearrangement hearing, Defendant was placed under oath.  (R. 53, at 7).  The District Court questioned Defendant extensively at the rearrangement to ensure that Defendant understood

all of the terms of the Plea Agreement.  (R. 53, at 7).  The Court specifically asked Defendant whether he personally signed the Agreement, dated April 9, 2013, and whether he reviewed the Agreement with defense counsel before signing it.  (*Id.* at 4-5).  Defendant answered those questions in the affirmative.  (*Id.*).  Defendant's counsel also confirmed that she "read every word of the plea agreement to him and explained everything to him."  (*Id.* at 8).  The Court further confirmed that Defendant and his counsel had not had any problems communicating with one another.  (*Id.* at 9). Defense counsel advised that she "had a good relationship" with her client and that they had "not had any issues at all."  (*Id.*).   The District Court then engaged in a line of questioning to determine Defendant's competence and, after being satisfied of his ability to understand and comprehend, continued with the proceeding.  (*Id.* at 7-9).

The District Court moved on to a discussion of the discovery, including witness statements, that the Government had provided to Defendant prior to the rearraignment.  The District Court specifically asked Defendant: "Have you gone over [the] discovery with your lawyer in your case?" (*Id.* at 10).  Defendant responded in the affirmative.  (*Id.*).  The District Court then confirmed once more that Defendant and his counsel reviewed the discovery together.  (*Id.*).  Later during the rearraignment, the District Court asked Defendant whether his counsel had "done everything [he] asked her to do."  (*Id.* at 12).  Defendant responded in the affirmative and confirmed that he was "satisfied with the representation that [his counsel] provided to [him]."  (*Id.*).

While reviewing the contents of the Plea Agreement with Defendant, the District Court also discussed the appellate-waiver provision with Defendant and defense counsel.   Defendant acknowledged and defense counsel confirmed that Defendant understood the waiver of his right to appeal and its effect:

3

> [THE COURT:]  Just based on how it reads, this is a full waiver of
> the right to appeal the sentence.  So no matter what the sentence
> you're appealing, you're waiving that right.  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Have you gone over the waiver with him?
>
> MS. BELLAMY:  Yes, Judge, we went over it.

(*Id.* at 26).

Following this discussion, defense counsel indicated to the District Court that Defendant

might be having second thoughts about pleading guilty.  (*Id.* at 36).  The District Court reiterated that

it was Defendant's decision to enter a guilty plea, that no one could force Defendant to plead guilty,

and that Defendant was entitled to a trial.  (*Id.* at 36-40).  The Court granted a one-hour recess for

Defendant to confer with his attorney.  (*Id.* at 39-40).

After the one-hour recess, defense counsel advised the Court that Defendant was prepared

to move forward with his guilty plea.  (*Id.* at 40).  The District Court asked Defendant:

> [THE COURT:]  I can only accept a guilty plea from you if, in fact,
> you agree that the United States would be able to prove these facts
> beyond a reasonable doubt.  I'm not forcing you to do anything.  This
> is your decision.  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  All right.  So are you prepared, then, to acknowledge
> the facts of the case as set forth in paragraphs 3(a), (b), (c), and (d) of
> your written plea agreement; that if this case proceeded to trial, the
> United States would be able to prove those facts beyond a reasonable
> doubt?
>
> THE DEFENDANT:  Yes.

4

(*Id.* at 40-41).[2]

After a complete Rule 11 colloquy, the District Court concluded Defendant was fully competent and capable of entering an informed plea and that Defendant understood the nature of the charges and the consequences of entering a guilty plea.  (*Id.* at 46-47).   The District Court accordingly found that Defendant's guilty plea was knowing and voluntary and supported by an independent basis of fact.  (*Id.* at 47).

Before sentencing, the Probation Office prepared a Presentence Investigation Report (PSR). On June 19, 2013, defense counsel filed Objections to the Offense Conduct section of the PSR at Defendant's request.  (*See* R. 55, at 2-3).  Specifically, Defendant objected to paragraphs 4 and 5 of the Offense Conduct section—covering his participation in the conspiracy and the amount of drugs

---

[2] Defendant agreed if the case were to proceed to trial, the United States would be able to prove the following facts set forth in the written Plea Agreement beyond a reasonable doubt:

(a)  During a period of time beginning in 2009 and continuing through 2011, the Defendant and others conspired to distribute cocaine.  Members of the conspiracy engaged in overt acts in furtherance of this conspiracy in the Eastern District of Kentucky and elsewhere.

(b)  The Defendant allowed members of the conspiracy to use his home in Cincinnati to store and process loads of cocaine and heroin on two occasions in April and May of 2011. Each load was approximately 10 kilograms of cocaine and 2 kilograms of heroin.  Kevin Davis also allowed the conspiracy to store money at his residence.

(c)  On December 1, 2010, Raymond Hill directed Kevin Davis to remove approximately 8 or 9 ounces of cocaine from a vehicle and hide it before police seized it.  Kevin Davis complied with this request.

(d)  During the course of the conspiracy, the Defendant was also involved in selling marijuana.  On August 31, 2011, the Defendant and a companion were in the process of traveling to California to purchase pounds of marijuana when they were stopped at the airport in Boone County, Kentucky.  Officers seized over $60,000 in currency from the Defendant and his companion.  They intended to use this money to purchase marijuana for distribution purposes.

(R. 39, at ¶ 3).

contained in each "load"—arguing that "he did not admit to those paragraphs at the plea and he stipulated that he was entering the plea on the basis that . . . the Government could prove [the facts] beyond a reasonable doubt if he went to trial."  Defendant next objected to the quantity of drugs that the PSR stated he removed from Hill's car, maintaining that he moved approximately two ounces of cocaine rather than eight or nine.  Defendant also objected to the total amount of drugs, in kilogram weight, attributed to him based on his previous two objections.  (*See id.* at 3-15).

On July 16, 2013, Defendant appeared before the District Court for sentencing.  (R. 38).  The District Court heard argument on Defendant's Objections to the Offense Conduct section of the PSR and overruled each in turn.  (R. 55, at 3-15).  The District Court also rejected defense counsel's request to hold the mandatory-minimum sentence unconstitutional as applied to Defendant.  (*Id.* at 8-14).  After analyzing the sentencing factors set forth in 18 U.S.C. § 3553(a), the District Court imposed the mandatory-minimum sentence of 120 months of imprisonment.  (*Id.* at 19-22).

On May 2, 2014, Defendant filed the pending § 2255 Motion to Vacate, Set Aside, or Correct Sentence.  (R. 50).  Defendant's Motion asserts that he received ineffective assistance of counsel in violation of his Sixth Amendment rights.  (*See id.* at 4-5, 7).  In his Reply, Defendant requests for the first time that he be permitted to withdraw his guilty plea because of his trial counsel's ineffective assistance.  (R. 65).

## II.    ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.  *See* § 2255(a).  A § 2255 motion does not

6

have to be founded on constitutional error or even federal law. *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006). However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (*citing Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

Therefore, a defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (*citing Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A defendant must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

## A.     Ineffective Assistance of Counsel Claims.

The claims raised by Defendant in his § 2255 Motion are difficult to parse. Although Defendant identifies three separate "grounds" for relief in his Motion, a review of Defendant's sixty-two page handwritten filing reveals additional distinct claims of ineffective assistance of counsel. Liberally construing the three "grounds" set forth in the Motion, the Court finds that Defendant

actually asserts six separate claims of ineffective assistance of counsel. Specifically, Defendant asserts counsel was ineffective for: (1) failing to seek a bill of particulars from the United States in order to present an alibi defense; (2) failing to object to the relevant conduct attributed to Defendant; (3) failing to object at sentencing based on the Supreme Court's decision in *Alleyne v. United States*; (4) failing to negotiate a plea agreement that did not require Defendant to waive his appellate rights; (5) failing to negotiate a plea agreement that did not require Defendant to forfeit cash unrelated to the conspiracy; and (6) failing to provide Defendant with copies of the Plea Agreement and statements of Government witnesses until after he pleaded guilty. (*See* R. 50).

The Supreme Court has held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To meet this standard, the Court set forth a two-part test. First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88. In reviewing this prong, the lower court is to apply a deferential standard; there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him. *Id*. at 691-94. Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Thus, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment. *Id.* at 691.

In the context of a guilty plea, where a defendant is represented by counsel and enters a guilty plea upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (*quoting McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  While the deficient performance prong of the *Strickland* test remains the same, to establish prejudice a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (*quoting Hill*, 474 U.S. at 58-59).  Both prongs of the test must be met before a court finds ineffective assistance, but courts are not required to conduct an analysis under both.  *Strickland*, 466 U.S. at 697.  If the court finds a defendant cannot meet one prong, it need not address the second prong.  *Id.*

### 1.  Defendant's Claim that Counsel was Ineffective for not Seeking a Bill of Particulars Lacks Merit.

Defendant first argues that his counsel provided ineffective assistance because she failed to seek a bill of particulars in order to present an alibi defense.  (R. 50, at 4).  Defendant argues had his counsel requested a bill of particulars, the Government would have been required to specify the exact dates and times of his alleged overt acts in furtherance of the drug conspiracy.  Armed with this information, Defendants contends he could have established an alibi defense.  (*Id.*).

"The purpose of a bill of particulars is to give a defendant key factual information not contained in the indictment, so as to enable him or her to prepare a defense and avoid surprise at trial."  *United States v. Page*, 575 F. App'x 641, 643 (6th Cir. 2014) (*citing United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993); *see also* Fed. R. Civ. P. 7(f); 1 Charles Alan Wright,

et al., *Federal Practice & Procedure*, § 130 (4th ed. 2008) ("Bill of Particulars")).  However,

contrary to Defendant's belief, the Government is not required to disclose every overt act that it can

prove in furtherance of a conspiracy.  *Salisbury*, 983 F.2d at 1375.  Instead, a bill of particulars is

intended to provide criminal defendants "a tool to minimize surprise and assist . . . in obtaining the

information needed to prepare a defense and to preclude a second prosecution for the same crime."

*Id.*  The Sixth Circuit has explicitly stated that a bill of particulars "is not meant as a tool for the

defense to obtain detailed disclosure of all evidence held by the government before trial[, and] a

defendant is not entitled to discover all the overt acts that might be proven at trial."  *Id.* (citations

omitted).

The affidavit provided by Defendant's trial counsel in support of the United States'

opposition to Defendant's § 2255 Motion demonstrates that she obtained all available information

from the Government.  (R. 56-2).  Defense counsel avers:

> 6.     That the Affiant spent many hours with the Defendant at the
>        Boone County Detention Center reviewing all discovery,
>        discussing trial strategy, and plea negotiations.  In addition,
>        the Affiant fully investigated other witnesses and the viability
>        of motions by interviewing witnesses and visiting the scene.
>
>    . . . .
>
> 10.    That the Affiant inquired about the time frames of the alleged
>        drug transactions to which the Defendant was involved, and
>        the prosecutor could not give precise, exact dates and times.
>        Specifically, the other defendants who implicated the
>        Defendant did not recall the specific dates and times.
>        Therefore, the Affiant had no basis for a Bill of Particulars.
>        This was explained to the Defendant in person.

(*Id.* at ¶¶ 6, 10).  On its face, the affidavit shows that defense counsel explored the possibility of

filing a motion for a bill of particulars to try to obtain specific dates and times for the alleged drug

10

transactions in the conspiracy. Counsel explains she sought the information that a bill of particulars would have contained, but the prosecutor did not have the specific information because the government witnesses who implicated the Defendant did not recall specific dates and times. (*Id.*, at ¶ 10). Based on these facts, it would have been futile for defense counsel to file a motion for a bill of particulars, and her failure to do so does not constitute ineffective assistance of counsel. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (defense counsel's failure to pursue futile motions and objections does not constitute ineffective assistance of counsel). Thus, Defendant fails to establish his counsel's performance was deficient.

Even assuming Defendant established that counsel was deficient in not requesting a bill of particulars, he has not established prejudice as he fails to establish with reasonable probability that but for counsel's errors, he would not have pleaded guilty. Defendant attempts to argue that had his counsel filed for a bill of particulars, he would have been able to establish an alibi defense to the conspiracy charge. (R. 50, at 51). By way of example, Defendant notes he was in Miami, Florida in May 2011 for Memorial Day weekend, and he was with his family during Easter weekend, presumably also in 2011. (*Id.* at 52-53).

The law is well established that in order for a court to find a defendant guilty of conspiracy, the defendant need not have participated in every aspect of the conspiracy. *See United States v. Shabani*, 513 U.S. 10, 15-17 (1994). On the contrary, the Supreme Court has held, "[i]n order to establish a violation of 21 U.S.C. § 846, the Government need not prove the commission of *any* overt acts in furtherance of the conspiracy." *Id.* at 15 (emphasis added); *see also id.* at 16 (*citing Iannelli v United States*, 420 U.S. 770, 777 (1975) ("Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act.")). Even assuming Defendant could establish

11

an alibi for his whereabouts during two weekends in 2011, he fails to explain how these weekends are material to the validity of his conspiracy conviction.   Notably, Defendant's alibi for two weekends does not account for his whereabouts during the remainder of the *four-and-a-half years* that the Government alleged he participated in the conspiracy.   (R. 39, at ¶ 3(a)-(d)).   In addition, the Government was not required to prove *any* overt acts by Defendant in furtherance of the drug conspiracy to which he pleaded guilty.   *Shabani*, 513 U.S. at 13-15 ("We have consistently held that the common law understanding of conspiracy does not make the doing of any act other than the act of conspiring a condition of liability" (internal quotations omitted)).

Indeed, at the plea hearing, the District Court explained to Defendant the law applicable to the charge in Count Two of the Superseding Indictment.   Defendant and the District Court engaged in the following colloquy regarding the timing of Defendant's participation in the conspiracy:

> [THE COURT:]   Now, the time frame alleged in Count 2 is approximately four and a half years.   As a matter of law, you don't need to be involved during that entire period of time.   If this case proceeded to trial, I would instruct the jury that as a matter of law, they would not need to conclude that you were involved the entire time.   Again, I'm paraphrasing what I would tell the jury.   Do you understand that you don't need to be involved that entire time frame in order to be guilty of Count 2?
>
> THE DEFENDANT:  No, not really.
>
> THE COURT:  Not really? Okay. So if you do something during that time frame that is part of a conspiracy with someone else—let's say you didn't get involved until 2010 or 2009—the fact that Count 2 starts with "from on or about August 19th, 2006," that would not be a defense.   *Do you understand that?   That you weren't involved at the beginning.   Do you understand that would not be a defense?*
>
> THE DEFENDANT:  *Yes.*

(R. 39, at 33-34) (emphasis added).

Moreover, Defendant's purported alibi defense is directly contradicted by his own admissions in his signed confession, in his written Plea Agreement, and during his rearraignment. (R. 56-1; R. 39, at ¶ 3(a)-(d); R. 53, at 40-42). During his plea hearing, the District Judge reviewed the elements of Count 2 with the Defendant, and Defendant admitted the Government could prove the following facts beyond a reasonable doubt:

> THE COURT:   All right.  So are you prepared, then, to acknowledge the facts of the case as set forth in paragraphs 3(a), (b), (c), and (d) of your written plea agreement; that if this case proceeded to trial, the United States would be able to prove those facts beyond a reasonable doubt?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  You do acknowledge that.  All right.  During the time frame alleged in the superseding indictment, members of the conspiracy distributed cocaine in Boone County, Kentucky and other places.  You acknowledge the government would be able to prove that beyond a reasonable doubt?
>
> THE DEFENDANT:  Yes.
>
> THE COURT: And you further acknowledge that the government could prove beyond a reasonable doubt that you allowed members of the conspiracy to use your home in Cincinnati to store and process loads of cocaine and heroin on two occasions in May and April of 2011?  Do you acknowledge that the government could prove those facts beyond a reasonable doubt?
>
> THE DEFENDANT:  Yes.
>
> THE COURT: And according to your written plea agreement, each load was approximately ten kilograms of cocaine and two kilograms of heroine.  And you allowed the members of the conspiracy to store money at your residence as well.   Do you acknowledge the government could prove those facts beyond a reasonable doubt?
>
> THE DEFENDANT:  Yes.

(R. 53, at 40-42).

The Supreme Court has instructed that "[s]olemn declarations in open court carry a strong presumption of veracity." *Blackledge v. Allison*, 417 U.S. 63, 73-74 (1977). Indeed, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* Here, Defendant admitted under oath that the Government could prove the factual basis for the charged conduct in Count 2 beyond a reasonable doubt. Thus, his claim that he could have established an alibi defense had his counsel requested a bill of particulars is without merit. Defendant's first claim fails.

### 2.   Defendant's Claim that Counsel was Ineffective for Failing to Object to Relevant Conduct and for Not Informing him of his Right to Proceed to Trial Lacks Merit.

As construed by the Court, Defendant next claims that his counsel was ineffective for failing to object to the amount of relevant conduct attributable to him at sentencing. (*See* R. 50, at 19-36). Defendant appears to contend that defense counsel's failure to object to the amount of relevant conduct deprived him of his due process rights. (*Id.* at 34).

 "Relevant conduct" includes all acts committed by the defendant or his co-conspirators "during the commission of the offense of conviction, [or] in preparation for that offense[.]" United States Sentencing Guidelines (U.S.S.G.) § 1B1.3(a)(1). The district court's relevant-conduct determination must be supported by a preponderance of the evidence. *United States v. Walton*, 908 F.2d 1289, 1301 (6th Cir. 1990). Here, to the extent that Defendant's Motion argues his counsel was ineffective for failing to object to the amount of relevant conduct at sentencing, Defendant's

contention is factually inaccurate.  As described above, defense counsel filed written Objections to

the Offense Conduct section of the PSR and then argued those Objections at sentencing:

> THE COURT:   All right.  Now, [your attorney] had submitted some objections [to the PSR] –
>
> THE DEFENDANT:   Right.
>
> THE COURT:   – by way of an e-mail to Kim Heidel with Probation, dated June 19.
>
> . . . .
>
> THE COURT:   All right.  Now, the remaining three objections pertain to portions of the Offense Conduct section of the presentence report.  I do recall, and my notes reflect, that at the time the defendant entered his guilty plea, he acknowledged that the proof in the—or the factual section of the plea agreement, while he wouldn't admit to those facts, he admitted that the government could prove those facts beyond a reasonable doubt.  And I think there was a distinction drawn there.  It was one that, from a legal perspective, was without a difference.  So whether or not he agreed or he acknowledged that they could prove the facts beyond a reasonable doubt, either one of those was sufficient for purposes of the plea.  Now, the facts in paragraphs 4, 5, 6, and 7 of the PSR are, in essence, verbatim from the facts he acknowledged that the government could prove beyond a reasonable doubt.  And you acknowledge that?
>
> MS. BELLAMY:   Yes, Your Honor.
>
> THE COURT:  Okay. Now, the drug quantity objection, Objection Number 3, the defendant objects to the quantity in paragraph 6 as he maintains that the quantity was approximately 2 ounces. And I do recall him explaining or acknowledging that, at least as it relates to a particular instance where Mr. Hill had directed him to remove some cocaine from a vehicle and hide it before the police seized it.  That is, in essence, paragraph 3(c) of the plea agreement.  Again, that's beyond a reasonable doubt.
>
> We have the other quantities set forth where other members of the conspiracy had used his home in Cincinnati to process and store cocaine and heroin.  And then there's a quantity attributed to that,

15

albeit—all acknowledged by the defendant to be proven beyond a reasonable doubt. So I'm a little bit confused that I can, on one hand, find that by a preponderance of the evidence it's two ounces when he's acknowledged that the proof that the United States would establish beyond a reasonable doubt was the quantity set forth in the plea agreement.

MS. BELLAMY: Judge, and I think the word you're probably looking for is maybe perplexed. And I think it was to him. And I think these objections are Kevin's voice that he wanted and needed in here.

THE COURT: I understand.

(R. 55, at 2-5). Thus, Defendant's suggestion that his counsel did not object to the amount of relevant conduct attributable to him at sentencing is factually inaccurate.

Indeed, at the sentencing hearing the District Court explained in detail why the objections to Defendant's relevant conduct were without merit, noting that Defendant had agreed that the United States could prove the factual basis set forth in Paragraph 3 of the Plea Agreement beyond a reasonable doubt if the case were to proceed to trial. (R. 55, at 6-7). The Court continued:

THE COURT: . . . In view of that acknowledgment, the defendant is hard-pressed to object to the drug quantity he previously agreed could be proven beyond a reasonable doubt.

The relevant conduct, as the courts have found, need only be proved by a preponderance of the evidence. Of course, beyond a reasonable doubt is a much higher standard. So for purposes of these objections, while it is true that [Defendant] has not necessarily admitted to the facts, he did acknowledge that the government could prove those facts beyond a reasonable doubt if the case proceeded to trial. He also agreed to a relevant conduct with a base offense level of 34 in his plea agreement and cannot argue otherwise now.

(*Id.* at 7). Even if Defendant's counsel had failed to raise objections, as Defendant contends, this failure would not demonstrate deficient performance. Defendant admitted, under oath, that the

16

Government could prove the relevant conduct underlying the conspiracy charge beyond a reasonable doubt as his rearraignment hearing.  Having admitted that the Government could prove his relevant conduct beyond a reasonable doubt at trial, any objection to relevant conduct at sentencing would have been (and in fact, was) properly overruled.

Defendant also contends counsel should have objected to the Government's use of his co-conspirators' testimony in establishing his amount of relevant conduct as a violation of his due process rights.  Defendant cites to several out-of-circuit cases to argue that due process prevents the use of out-of-court statements unsupported by sufficient indicia of reliability to increase the amount of relevant conduct used to calculate a defendant's sentence.  (*Id.* at 22-27 (*citing, e.g., United States v. Garcia-Sanchez*, 189 F.3d 1143 (9th Cir. 1999) (holding that it was error for the district court to sentence a defendant before determining the scope of the defendant's agreement with his co-conspirators); *United States v. Newland*, 116 F.3d 400 (9th Cir. 1997) (holding that the district court must make an individualized evaluation of the amount of drugs for which an individual defendant is responsible); *United States v. Petty*, 992 F.2d 887 (9th Cir. 1993) (holding that each conspirator should be sentenced based on the quantity of drugs that fell within the scope of his particular agreement, rather than amount distributed by entire conspiracy)).

However, Defendant's reliance on these cases is misplaced.  Defendant suggests that because certain "conclusory" statements by his co-conspirators and agents were never corroborated by any controlled buys or audio/visual or phone conversations, they are unreliable.  Review of the PSR and sentencing transcript reveals no mention of co-conspirator or agent statements that were considered in the Court's determination of Defendant's relevant conduct.  To the contrary, as explained above, the determination of Defendant's relevant conduct was based upon Defendant's *own admission* that

the drug quantity in the Plea Agreement could be proven beyond a reasonable doubt at trial. (R. 55, at 7).

Defendant also complains that his counsel should have objected to his being held accountable for all of the acts of his co-conspirators, arguing that the Court was required to undertake an individualized evaluation of Defendant's relevant conduct. Again, Defendant's claim is completely refuted by the record. The determination of Defendant's relevant conduct was based upon Defendant's own admission that the Government could prove his participation in the conspiracy beyond a reasonable doubt. Thus, Defendant's argument that counsel was ineffective for not objecting to relevant conduct lacks merit.

Defendant devotes a considerable amount of his Motion to developing various cross-examination questions, which he suggests his counsel should have employed to discredit the testimony of Government witnesses. (*See, i.e.* R. 50, at 19, 20, 37, 39, 40, 44). Defendant explains that by discrediting the testimony of Government witnesses, the amount of relevant conduct attributable to Defendant would have been reduced. Defendant maintains his counsel's failure to cross-examine Government witnesses violated the Confrontation Clause and rendered her assistance ineffective. (*Id.* at 47). It is unclear at what point Defendant proposes counsel should have cross-examined witnesses, as he refers to both the sentencing proceedings and jury trial. Defendant maintains that cross-examination of Government witnesses at sentencing would have revealed that their testimony lacked a sufficient indicia of reliability for purposes of determining Defendant's relevant conduct. (R. 50, at 32-33). Defendant also suggests he would have proceeded to trial, had counsel assured him that she would request jury instructions, cross-examine Government witnesses, and file various pre-trial motions. (*Id.* at 32, 34).

18

Defendant's claim that counsel should have cross-examined Government witnesses at his sentencing again ignores that the District Court's determination of his relevant conduct was based upon Defendant's *own admission*.  (R. 55, at 7).  Even assuming counsel's cross-examination of Government witnesses at sentencing would have undermined their credibility, the fact remains that Defendant had already admitted that the Government could prove the relevant conduct underlying the conspiracy beyond a reasonable doubt.  Moreover, Attorney Bellamy's Affidavit explains that although she attempted to negotiate better plea agreement terms with the Government, the Plea Agreement Defendant ultimately signed was the best one offered.  (R. 56-2, at ¶ 17).  Specifically, the Government would not agree to allow Defendant to leave the issue of relevant conduct open at sentencing.  (*Id.*).  Thus, by the terms of his Plea Agreement, Defendant agreed to the relevant conduct for purposes of sentencing.

Defendant's claim that his attorney failed to inform him of his right to proceed to trial also lacks merit.  At his rearraignment, Attorney Bellamy expressed concern that Defendant was having second thoughts about pleading.  (R. 53, at 36).  Attorney Bellamy explained,

> MS. BELLAMY: Judge, we've thoroughly discussed what [sentence Defendant] would be looking at if he went to trial and he was found guilty.  He knows that he would be closer to the 15-year mark without the reductions as the recommendations in the guidelines.  He knows that's a possibility.
> . . . .
>
> And he knows it's a possibility that, if we went to trial, it could be closer to the ten-year mark or it could be closer to the 15-year mark.  He knows this.  We went over this in thorough.  We've spent many times of two, two-and-a-half hour blocks, going over the discovery, weighing possible witnesses.  I've interviewed other members of the conspiracy.  He fully knows what he could get, what could happen if he goes to trial.

19

(*Id.* at 39).  In her Affidavit, Attorney Bellamy elaborates on the extensive discussions she had with Defendant in preparation for trial.  (R. 56-2, at ¶ 11).  Attorney Bellamy explains the steps she and Defendant took to prepare for trial, including: preparation of cross-examination questions to attack the credibility of Government witnesses; preparation of Defendant's testimony and discussion of potential cross-examination questions; and discussion of the potential risk for a longer sentence in the event Defendant proceeded to trial and lost.  (*Id.* at ¶¶ 12, 13, 15, 16).

Even assuming counsel failed to inform Defendant of his right to a trial, the District Court's thorough plea colloquy cured any error.  (R. 53, at 13-15); *Blackledge*, 431 at 73-74.  At the rearraignment, the District Judge explained:

> THE COURT:    I think we have a trial date set for the first Monday in May.  Do you understand that, that we still have a trial date here?
>
> THE DEFENDANT:    Yes.  Yes.
>
> THE COURT:    But by pleading guilty, you're not going to have a trial.  You understand?
>
> THE DEFENDANT:    Yes.
>
> THE COURT:    And there won't be witnesses called against you, that type of thing.  Do you understand that?
>
> THE DEFENDANT:    Yes.
>
> THE COURT:    Let me explain to you what you're waiving as far as a jury trial.  I'm sure your attorney's gone over this in some form or fashion, but you would be presumed innocent at trial the United States would have to prove your guilt by competen[t] or admissible evidence beyond a reasonable doubt before a jury could convict you.  You understand that, sir?
>
> THE DEFENDANT:    Yes.

THE COURT:    At trial, your attorney would be with you.  *She would be able to cross-examine all the witnesses called by the United States.*  Do you understand that?

THE DEFENDANT:   Yes.

THE COURT:  You have a right to have your attorney ask the Court to have subpoenas issued to other individuals to testify at trial if, in fact, you wanted to do that.  Do you understand that, that she can subpoena witnesses to come in to testify for you at trial?

THE DEFENDANT:   Yes.

THE COURT:  But you're waiving that right as well.  Understand?

THE DEFENDANT:    Yes.

THE COURT:    You are also waiving your right not to incriminate yourself because every defendant has a constitutional right to remain silent.  But by pleading guilty, you're waiving that right because I'm going to need to have you confirm later on in this proceeding what you did which makes you believe you're guilty of the conspiracy charged.  Do you understand that?

THE DEFENDANT:    Yes.

(R. 53, at 13-15) (emphasis added).   Thus, to the extent Defendant maintains he would have proceeded to trial had he been informed of his right to do so, this claim also fails.

> **3.    Defendant's Claim that his Counsel was Ineffective for Failure to Object at Sentencing Based on the Supreme Court's Decision in *Alleyne v. United States* Lacks Merit.**

As construed by the Court, Defendant next argues his counsel was ineffective for failing to object to the amount of drugs attributed to him at sentencing based on the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  (R. 50, at 30-31).  In *Alleyne*, decided one month

before Defendant's sentencing,[3] the Supreme Court held, "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt," 133 S. Ct. at 2155.  The Court explained, "*Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] concluded that any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime."  133 S. Ct. at 2160 (*quoting Apprendi*, 530 U.S. at 490).  *Alleyne* thus extended the rule articulated in *Apprendi* to preclude judicial factfinding from enhancing statutory minimums, as well as maximums.  *Id*.  Defendant appears to believe that such an objection by counsel could have reduced the amount of drugs attributable to him at sentencing. (R. 50, at 30-32).

But counsel was not ineffective for failing to object to the amount of drugs attributed to Defendant at sentencing based on the Supreme Court's decision in *Alleyne*.  *Alleyne* stands for the proposition that any fact increasing a defendant's minimum penalty must be submitted to the jury and proved beyond a reasonable doubt.  133 S. Ct. at 2155.  Here, however, the "fact" that resulted in Defendant's mandatory minimum sentence–that the conspiracy involved 5 kilograms of cocaine–was charged in the indictment and admitted by Defendant as part of his guilty plea.  The Sixth Circuit has recognized that *Alleyne* does not apply where a defendant knowingly admits to the facts necessary for an enhanced sentence.  *See United States v. Johnson*, 732 F.3d 577, 584 (6th Cir.

---

[3] Defendant argues that although *Alleyne* has not been made retroactively applicable to collateral attacks of a conviction, the Court should still find that his counsel was ineffective for failure to argue the same theory as Alleyne's attorney.  (R. 50, at 30).  But at the time *Alleyne* was decided, Davis's conviction had not become final and therefore Defendant can argue that the new rule of criminal procedure adopted in *Alleyne* should apply to his collateral proceeding challenging his conviction.  *Cf. Rogers v. United States*, 561 F. App'x 440, 443-444 (6th Cir. 2014) (noting that new rule of criminal procedure adopted in *Alleyne* did not apply to defendant's collateral proceeding where conviction had become final prior to the Supreme Court's decision in *Alleyne*).

2013); *United States v. Yancy*, 725 F.3d 596, 601 (6th Cir. 2013) ("Because *Alleyne* did not involve the effect of a defendant's admission to the facts necessary for an aggravated crime, it leaves undisturbed our cases deeming such admissions fatal to *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] claims."). *Alleyne* did not apply here because Defendant admitted to the relevant conduct. Thus, counsel's failure to raise an objection did not constitute deficient performance. *Hanley*, 906 F.2d at 1121.

Even assuming counsel was deficient in not raising an *Alleyne* objection, Defendant cannot establish prejudice. Because Defendant admitted that the Government could prove all of the elements of Count Two of the Superseding Indictment beyond a reasonable doubt, (R. 39, at ¶ 3 (admitting as much in the Plea Agreement); R. 53, at 40-41 (admitting same before the District Court at the rearraignment)), the District Court would have overruled an *Alleyne* objection. Thus, Defendant cannot establish prejudice because he cannot show that the outcome of the proceeding would have been different had counsel raised an *Alleyne* objection. This claim therefore fails.

> **4.   Defendant's Claim that his Counsel was Ineffective for Negotiating a Plea Agreement that Required Defendant to Waive His Appellate Rights Lacks Merit.**

Defendant next argues that his counsel was "ineffective for failing to object to and [for] negotiating a plea agreement to waive appellate rights." (R. 50, at 5). He alleges that the Agreement defense counsel negotiated required him to waive not only his appellate rights but also his right to collaterally attack his conviction. (*Id.* at 56).

As an initial matter, Defendant's argument that his counsel was ineffective for failing to negotiate an Agreement that did not contain a collateral-attack waiver is contradicted by the facts before the Court. As the United States notes, the unsigned plea agreement attached to Defendant's

§ 2255 Motion is not a copy of the actual Plea Agreement Defendant ultimately entered into.  (R. 56, at 12).  Indeed, the final Plea Agreement did not contain a collateral-attack waiver, a change which the AUSA noted at Defendant's plea hearing.  (R. 39, at ¶ 8; R. 53, at 27).

Defendant's claim that his counsel was ineffective for negotiating a Plea Agreement with a waiver of his appellate rights also fails.  It is well settled that a defendant may waive any right, including a constitutional right, in a plea agreement provided that the waiver is knowing and voluntary.  *Hardin v. United States*, 595 F. App'x 460, 461 (6th Cir. 2014); *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004); *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001).  At the rearraignment, the District Court confirmed with both defense counsel and the United States that the Plea Agreement was the best the United States had offered, that it contained an appellate-rights waiver, and that it did not contain a collateral-attack waiver:

> [THE COURT:]   But in paragraph 8 of your plea agreement, assuming the Court—well, I guess it's not assuming anything.  Just based on how it reads, this is a full waiver of the right to appeal the sentence.  So no matter what the sentence you're appealing, you're waiving that right.  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Have you gone over the waiver with him?
>
> MS. BELLAMY:  Yes, Judge, we went over it.
>
> THE COURT:  All right.  Now, there is no collateral attack waiver.
>
> . . . .
>
> Were there any other plea agreements offered to this defendant, Mr. Bracke?
>
> MR. BRACKE:  There was an earlier version that was substantially—it was very similar except I think we tweaked the facts

24

a little bit and we removed the collateral attack waiver. And we also tweaked the language of the forfeiture provision to make sure it clarified that Mr. Davis was only forfeiting his interest in the objects. I think those are the only changes that were made from the very first draft to the one that's presented to the Court.

THE COURT: Is that fair –

MS. BELLAMY: That's correct, yes.

(R. 53, at 26-27). Further, Defendant does not claim to have been unaware of the waiver provision to which he agreed, and the transcript forecloses any challenge on this ground because Defendant admitted he understood the waiver provision. (R. 53, at 26). Instead, Defendant seems to suggest that counsel was ineffective because she encouraged him to waive his rights to appeal. However, the Sixth Circuit has rejected similar arguments:

> [w]here the court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." [*Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)], *quoting Jackson v. United States*, 512 F.2d 772, 773 (5th Cir. 1975). Plea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260, 92 S. Ct. 495, 497, 30 L.Ed.2d 427 (1971) . . . To allow defendant to attempt to prove . . . that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court . . .[.] Defendant's plea was knowing and voluntary.

*Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). Here, Defendant admitted he understood the terms of the waiver provision, and nothing in the record suggests otherwise. Both the District Court's questioning and Defendant's answers are consistent with the knowing and voluntary entry

of a guilty plea. Thus, he has failed to establish that counsel rendered constitutionally ineffective assistance by failing to negotiate a plea agreement without a waiver of his appellate rights.

> **5.    Defendant's Claim that his Counsel was Ineffective for Negotiating a Plea Agreement that Forfeited Cash Unrelated to the Conspiracy Lacks Merit.**

Defendant next argues that his counsel was ineffective for failing to negotiate a plea agreement that did not require Defendant to forfeit a substantial sum of money that agents seized from Defendant and his cousin at the airport on August 31, 2011.[4]  (R. 50, at 56-57).  In his § 2255 Motion, Defendant alleges for the first time that he possessed that currency for the lawful purpose of purchasing jewelry in order to open a jewelry store.  (*Id.* at 57).  This assertion contradicts Defendant's signed confession in which he acknowledged that the money seized from him and his cousin at the airport was intended to be used to purchase high grade marijuana.  (*See, e.g.*, R. 56-1).

Again, Defendant's logic here is difficult to follow.  To the extent Defendant claims his counsel was ineffective for negotiating a plea agreement that required Defendant to forfeit the money seized from him at the airport, his claim lacks factual support.  The Plea Agreement Defendant signed did not require him to forfeit money seized nearly two years' before the Agreement was entered into.  As the United States confirmed for the District Court at Defendant's rearraignment, Defendant had already administratively forfeited the money seized from him at the airport prior to entering into the Agreement with the Government:

> THE COURT:  All right.  Let me ask you about that, because the plea agreement as currently written only reflects—I guess

---

[4] Defendant's Motion refers to a sum of $80,000–$20,000 more than the $60,000 amount described in his Plea Agreement and at his rearraignment.  (R. 39, at ¶ 3(d); R. 53, at 42).  While the Court notes the discrepancy, it is not material to the Court's adjudication of Defendant's ineffective assistance of counsel claim.

all-encompassing, then, the vehicles mentioned in count—the forfeiture allegation.  It says, "will agree to the administrative or judicial forfeiture of his interest in all items, vehicles, and currency seized in this investigation."

MR. BRACKE:  Everything else has already been taken, Judge.  The only thing that remains outstanding is the vehicles.

THE COURT:  All right.  So the currency reflected in the factual basis at paragraph 3(d), that was already administratively forfeited?

MR. BRACKE:  Yes, Your Honor.

(R. 53, at 17-18).  Counsel therefore could not have negotiated a plea agreement dealing with the currency seized from Defendant at the airport because, as the Court noted, the currency had already been subject to administrative forfeiture.

Second, to the extent Defendant argues that counsel should have objected to the seizure of his currency as unrelated to the conspiracy for which he was charged, (*see* R. 50, at 58-59), that contention is also without merit.  Count Three of both the initial Indictment and the Superseding Indictment charged Defendant with conspiracy to distribute marijuana.  (R. 3; R. 21).  Defendant's claim that the money was intended to be used to purchase jewelry is directly contradicted not only by his signed confession (R. 56-1), but also by his admissions in his written Plea Agreement (R. 39, at ¶ 3(d)) and at his rearraignment:

THE COURT:  All right.  And the seizure of currency from the airport in Boone County, paragraph 3(d) indicates that airport police officers seized over $60,000 in currency from you, and then it goes on to state that *you intended to use this money to purchase marijuana for distribution purposes*.  Is that accurate?

THE DEFENDANT:  *Yes.*

(R. 53, at 42) (emphasis added).  Thus, Defendant, by his own admission, intended to use the money seized by airport police officers to purchase marijuana for distribution purposes.

Defendant has not met his burden of establishing that counsel rendered constitutionally ineffective assistance by failing to object to the seizure of Defendant's currency as unrelated to his criminal conspiracy proceeding.  Counsel is not required to raise and advocate meritless arguments or objections that have no chance of success.  *Lenoir v. Morgan*, No. 12-3461, 2013 WL 7144097, at *3 (6th Cir. Aug. 26, 2013) (counsel not ineffective for not raising meritless claims); *Maples v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).  In light of the foregoing, Defense counsel's performance in not challenging the seizure of Defendant's currency with the District Court was competent and objectively reasonable.

Finally, to the extent Defendant argues that counsel was ineffective for failing to contest the forfeiture of his cash in a civil proceeding pursuant to 21 U.S.C. § 881 (R.50, at 60), that argument is also without merit.  Defense counsel was appointed to represent Defendant in his criminal proceeding only; counsel was under no obligation to provide her services to Defendant in a civil forfeiture proceeding.  The Sixth Amendment right to counsel does not apply to civil forfeiture proceedings.  *U.S. v. $100,375.00 in U.S. Currency*, 70 F.3d 438, 440 (6th Cir. 1995).

Even if counsel's performance was constitutionally deficient, the record establishes that Defendant was not prejudiced by any alleged failure of counsel to investigate and challenge the seizure of Defendant's currency.  As the Court already noted, Defendant had already administratively forfeited the seized currency before entering into a Plea Agreement with the United States.  (R. 53, at 17-18).  Thus, Defendant is unable to show that but for counsel's failure to object, "the result of

the proceeding would have been different." *See Strickland*, 266 U.S. at 494.  Accordingly, this

ineffective assistance of counsel argument fails to meet either prong of *Strickland*.

> **6.      Defendant's Claim that Counsel Failed to Provide Him with a
> Copy of the Plea Agreement and Witness Statements Prior to
> Guilty Plea Lacks Merit.**

Finally, Defendant argues that his counsel was ineffective for failing to provide him with

copies of the Plea Agreement and statements of Government witnesses before he pleaded guilty.  (R.

50, at 7).  Again, the factual record before the Court refutes this claim.

First, to the extent Defendant's argument can be considered a challenge to the knowing and

voluntary nature of his plea, the claim lacks merit.  The transcript of Defendant's rearraignment

hearing and the content of the Plea Agreement he signed belie any claim that he did not receive the

Plea Agreement before he pleaded guilty.  Instead, the record demonstrates Defendant knowingly

and voluntarily entered his guilty plea.  *See Baker*, 781 F.2d at 90.

> THE COURT: . . . . All right.  Now, as far as the plea agreement
> itself, Mr. Davis, your attorney has negotiated a written plea
> agreement, which I'm holding in my hand.  There are some signatures
> on the last page of the agreement.  Now, you signed this prior to the
> returning of the superseding indictment.  This reflects a date of
> April 9, which was, I guess Tuesday of this week.  Is this your
> signature, Kevin Davis in blue ink, sir?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  All right.  Did you review the plea agreement before
> signing it, sir?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And did you go over it with your lawyer as well?
>
> THE DEFENDANT:  Yes.

(R. 53, at 4-5).  The record shows that Defendant signed the Plea Agreement on April 9, 2013.  (R. 39, at 5).  Defendant then appeared before the District Court and pleaded guilty on April 12, 2013. (R. 53, at 46).  At the rearraignment, Attorney Bellamy confirmed that she "read every word of the plea agreement to [Defendant] and explained everything to him."  (*Id.* at 8).

Defendant had the benefit of counsel during the plea process and rearraignment, and he stated he was satisfied with counsel's representation.  (*Id.* at 12).  If Defendant had not reviewed the Plea Agreement with counsel, he had ample opportunity to notify the Court of this during his rearraignment.  Even if counsel did not explain the Plea Agreement to Defendant as he alleges, the District Court discussed the Agreement at length in open court and verified Defendant understood its terms.  The AUSA summarized the terms of the Plea Agreement during the rearraignment, after which Defendant acknowledged that he had heard the summary and understood it to be an accurate representation of his agreement with the United States.  (*Id.* at 15-18).  Accordingly, the colloquy during the plea hearing would have cured any deficiency by counsel.  *United States v. Harding*, No. 6:04-65-DCR, 2008 WL 4073393, at * 5 (E.D. Ky. Aug. 29, 2008).

The rearraignment transcript similarly contradicts Defendant's claim that his counsel did not provide him with statements by the Government's witnesses until after he pleaded guilty.  The District Court brought up the topic of discovery and confirmed that Defendant had reviewed the materials with counsel:

> [THE COURT:]  Rule 16 of the federal criminal rules requires, among other things, that the United States provide the defendant with the evidence or a summary of the evidence that they intend to use if the defendant proceeds to trial. It's called discovery.
>
> Have you gone over that discovery with your lawyer in your case?

> THE DEFENDANT:  Yes.
>
> THE COURT:  All right.  Now, it may consist of statements of witnesses. It may consist of the seizure of money at the airport.  It may consist of a number of things.  But you have gone over that discovery with your lawyer?
>
> THE DEFENDANT:  Yes.

(R. 53, at 9-10).  If Defendant had not been provided witness statements or did not have the opportunity to review said statements with counsel, he had ample opportunity to notify the Court of this during his rearraignment.

In fact, defense counsel avers that she went over the witness statements with Defendant and even interviewed the United States' witnesses independently.  She explains by affidavit:

> 6.  That the Affiant spent many hours with the Defendant at the Boone County Detention Center reviewing all discovery, discussing trial strategy, and plea negotiations.  In addition, the Affiant fully investigated other witnesses and the viability of motions by interviewing witnesses and visiting the scene.
>
> 7.  Specifically, the Affiant and the Defendant thoroughly discussed and reviewed the other conspirators['] statements regarding the Defendant's activity.

(R. 56-2, at ¶¶ 6-7).

"[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."  *Blackledge*, 431 U.S. at 74.  "Solemn declarations in open court carry a strong presumption of veracity."  *Id.*  Here, both the Court's questioning and Defendant's answers are consistent with a knowing and voluntary entry of a guilty plea.

Even if counsel's performance was deficient, Defendant's claim fails because he cannot establish prejudice. Defendant presents a series of proposed cross-examination questions which he maintains should have been used by his trial counsel to discredit the testimony of the Government's witnesses. However, as already discussed above, Defendant admitted that the facts he now contests could be proven beyond a reasonable doubt by the Government. Moreover, Defendant knowingly waived his right to a jury trial, including his right to cross-examine witnesses. (R. 55, at 7). Thus, Defendant has not met his burden of establishing that counsel rendered constitutionally ineffective assistance or that he was prejudiced by his counsel's failure to provide Defendant with copies of the Plea Agreement and statements of Government witnesses prior to pleading guilty.

**B.     Defendant May Not Withdraw his Knowing and Voluntary Guilty Plea.**

In his Reply, Defendant clarifies that he also intends to raise a claim alleging that he should be permitted to withdraw his guilty plea due to his counsel's ineffectiveness. (R. 65, at 1). Although Defendant did not develop this argument in his initial § 2255 Motion, the Court will construe Defendant's claim as a Motion to Supplement his § 2255 Motion, which Motion the Court will grant. However, upon review of Defendant's supplemental filing, the Court finds that this claim is also without merit.

Federal Rule of Criminal Procedure 11(d) describes the limited circumstances in which a defendant may withdraw a guilty plea. Fed. R. Crim. P. 11(d). Rule 11(d)(1) allows a defendant to withdraw his guilty plea for any reason before the court accepts the plea. If a court has accepted a defendant's plea but not yet imposed sentence, then Rule 11(d)(2) allows a defendant to withdraw his guilty plea for "a fair and just reason."

Defendant relies on *United States v. Bashara*, 27 F.3d 1174 (6th Cir. 1994), for a seven-factor test to determine whether it is appropriate for a district court to allow a defendant to withdraw a guilty plea pursuant to Rule 11(d)(2).  However, in *Bashara*, the defendant sought to withdraw his guilty plea *before* the Court had imposed its sentence.  Here, on the other hand, the record reflects that Defendant did not seek to withdraw his guilty plea before sentencing.  Instead, Defendant now seeks for the first time to withdraw his guilty plea almost thirteen months *after* the District Court imposed its sentence in July 2013.  (R. 50).  Thus, Rule 11(d)(2) and the *Bashara* factors are inapplicable.

Federal Rule of Criminal Procedure 11(e) provides:  "After the court imposes sentence, the defendant may not withdraw a plea of guilty . . . and the plea *may be set aside only on direct appeal or collateral attack*."  Fed. R. Crim. P. 11(e) (emphasis added).  Because Defendant has already been sentenced, he may not now withdraw his guilty plea.  However, to the extent Defendant seeks to have his guilty plea set aside on the basis of ineffective assistance of counsel, Rule 11(e) allows for such relief on collateral attack.

Under *Hill*, 474 U.S. 52, and *Strickland*, 466 U.S. 668, if a defendant has been deprived of effective assistance of counsel so that his Sixth Amendment right to counsel has been violated, the plea will not be upheld on review.  *See also Baker*, 781 F.2d at 91.  Indeed, "[a] guilty plea can be involuntary as a result of the ineffective assistance of counsel." *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005), *citing Hill*, 474 U.S. at 59.  However, the *Strickland* Court made clear a defendant must meet a high bar to establish ineffective assistance: "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689.  Defendant has not overcome this presumption.

As discussed above, Defendant raises a number of challenges to counsel's conduct. However, Defendant has failed to establish that his trial counsel rendered ineffective assistance in violation of his Sixth Amendment rights. The record in this case reveals that Defendant's plea was knowing and voluntary: he consented in open court to the term of his Plea Agreement; he acknowledged his understanding of the effect of his guilty plea and the accompanying waiver of rights; and he consciously chose to enter a guilty plea rather than proceed to trial and risk a harsher sentence. While Defendant may not have received the leniency he sought at sentencing, the transcript of the proceedings makes clear that Defendant's guilty plea was knowing and voluntary, and was not, as Defendant contends, made as the result of ineffective assistance of counsel. Accordingly, Defendant's construed request to set aside his guilty plea should be denied.

## III.     CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant on his § 2255 claims. A certificate may issue only if he has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. In cases where a district court has rejected a petitioner's constitutional claims on procedural

34

grounds without reaching the merits, a COA should issue "when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 claims or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack*, 529 U.S. at 484). Accordingly, the undersigned recommends denying a certificate of appealability on Defendant's § 2255 claims upon the District Judge's entry of his final order in this matter.

## IV.   CONCLUSION AND RECOMMENDATIONS

Accordingly, the Court being sufficiently advised, for the reasons stated herein,

**IT IS ORDERED** that Defendant's Reply (R. 65), also construed as a Motion to Supplement Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (R. 50), is hereby **granted.**

Further, **IT IS RECOMMENDED** that:

(1)   Defendant Kevin Davis's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to § 2255 (R. 50) and Supplement (R. 65) be **denied;**

(2)   a Certificate of Appealability **be denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

(3)   Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and

(4)   this action be **stricken** from the active docket of this Court.

35

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 24th day of July, 2015.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

G:\DATA\habeas petitions\2255 R&R general\13-01 Davis R&R.final.wpd